[Civ. No. 1894. Third Appellate District.—January 27, 1919.]

## CATHERINE NEASHAM et al., Appellants, v. MARY L. YONKIN et al., Respondents.

WATERS AND WATER RIGHTS — ACTION TO RESTRAIN INTERFERENCE — ESTOPPEL AGAINST PLAINTIFF.—In this action to restrain interference with the waters of a creek and of two springs on lands owned by defendant, the pleading and a finding thereon that the defendant's lands were arid and valueless without irrigation, and that plaintiff's predecessor had induced the defendant to enter the lands as a homestead and to acquire them as a homestead under the laws of the United States, by the promise that he would give the defendant the use of the waters and make no further claim thereto if the defendant would make such homestead entry, warranted a judgment for the defendant by equitable estoppel.

ID.—ADVERSE POSSESSION.—In such action judgment for the defendant was also warranted by a finding, supported by evidence, that the defendant continued to use said waters from a certain year for more than five years thereafter in a "peaceable, quiet, open, uninterrupted, notorious, continuous, exclusive (manner) and adverse to the whole world, and particularly adverse to plaintiffs in this action and their predecessors in interest under a claim of right and title as against said plaintiffs and each of them."

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jamison & Wylie for Appellants.

W. Lair Thompson and Snow, Bronaugh & Thompson for Respondents.

BURNETT, J.—The action was brought to restrain the defendants from interfering with the flow of waters of a certain Neasham Creek, and of two certain springs, and for a judgment decreeing that plaintiffs are the owners of all the flow of said waters and entitled to the use of the same and that defendants have no right, title, or interest in or to the said waters or any part thereof.

Defendants answered, denying many of the allegations of the complaint and setting up two defenses, namely, that plain-

tiffs were estopped from claiming any interest in said waters, and that defendants had acquired a title thereto by adverse possession and use.

It may be said that the controversy is really as to the ownership of the waters flowing from two certain springs, designated as Nos. 1 and 2, located on the land of said defendants.

The court found "that in the year 1900 Ralph Neasham was the owner of, in possession of, and entitled to the possession of the above described land of plaintiffs; that in the year 1900 the said Ralph Neasham urged the defendant Mary L. Yonkin to enter under the homestead laws of the United States, and by virtue of said laws acquire title to the above-described lands of defendants, and at said time as an inducement to said defendant Mary L. Yonkin to enter said lands under said homestead laws agreed with said defendant that if she would enter upon the said lands and acquire title thereto, he, the said Ralph Neasham, would give the said defendant the use of the waters of the above mentioned Spring No. 1 and Spring No. 2, said springs being the same which plaintiffs assert the right to use in their complaint in this cause. That at said time said Ralph Neasham agreed with the said defendant that he would make no further claim to said waters of said springs or to the use thereof if defendant would enter said land; that said lands were at said time, and now are, arid and require artificial irrigation, and were valueless without water, and would not have been entered by said defendant under the homestead law without the use of the waters of said springs. That said defendant Mary L. Yonkin believed and relied upon the said statements and promises of the said Ralph Neasham, and so relying upon said statements did, in the month of December, 1900, enter upon the said land of defendants with the intention to claim and obtain title to said lands under the homestead laws of the United States of America, and thereafter complied with said homestead laws as to residence and cultivation, and diverted and applied to the necessary irrigation of said land and to the crops growing thereon, and for domestic use and stock water thereon all of the water of said Springs No. 1 and No. 2, and duly obtained patent to said lands under the homestead laws of the United States; that said defendant in reliance upon the said promise of said Ralph Neasham spent five years of her life acquiring title to said land, and expended large sums of money in improving said lands; that in the year

39 Cal. App.—30

1902 said Ralph Neasham again assured said defendant that she had a right to the use of the waters of said Springs No. 1 and No. 2, and that said Ralph Neasham had waived all claim thereto; and that said defendant could continue spending money upon and improving her said homestead and acquire title thereto with the assurance that she would not be deprived of the use of the waters of said springs; that said defendant completed her homestead residence and improvements upon said lands in reliance upon said first and said further assurances; that in the year 1903 said defendant Mary L. Yonkin undertook to secure a right to construct reservoirs upon the upper sources of the waters of Neasham Creek with the intention and purpose of impounding the flood and freshet waters of said creek, but at said time the above mentioned plaintiffs urged the defendant to desist from acquiring a right to said freshet and flood waters, and stated to defendant that their father, Ralph Neasham, had given the defendant the waters of springs No. 1 and No. 2, and that because of said gift plaintiffs had lost their right to use said waters; and that said defendant should permit plaintiffs to have said freshet waters and acquire said reservoir site; that said defendant relied upon said statements of plaintiffs that the waters of said springs belonged to her by gift from the said Ralph Neasham, and so relying upon said statements desisted from her efforts to secure said reservoir site and use of said flood waters, and had lost the rights which were acquired under her reservoir application, and has depended solely and entirely upon the waters of said Springs for the necessary irrigation of her said lands, and for domestic and stock water thereon.''

The court further found "that in the month of December, 1900, defendants entered upon the above-mentioned springs No. 1 and No. 2 and cleaned the same out, and in the irrigation season of 1901 diverted the waters of said springs to and used the same upon the above described lands of defendants in the necessary irrigation of crops thereon, and for domestic and stock water.''

It is further found that she, the said Mary L. Yonkin, continued to use said waters from said springs from the year 1901 for more than five years thereafter in a "peaceable, quiet, open, uninterrupted, notorious, continuous, exclusive (manner) and adverse to the whole world, and particularly adverse to plaintiffs in this action and their predecessors in interest

under a claim of right and title as against said plaintiffs, and each of them."

We have examined the record and have discovered that each of the said findings is abundantly supported by the evidence. The particular portions of the transcript wherein the evidence is found are pointed out in the brief of respondents and we may add that appellants have filed no reply brief and have made no attempt in any manner to meet the argument made by said respondents. That an equitable estoppel was sufficiently pleaded and found cannot be disputed, no citation of authorities being required, and that either of said findings, if supported by the evidence, would warrant the judgment is equally beyond controversy. The fact is that the case presents simply a question of conflict of evidence and about the only surprising thing is that the appeal should have been taken at all.

The judgment is affirmed.

George F. Buck, P. J., *pro tem.*, and Hart, J., concurred.